## BUCKNAM vs. NASH & al.

The clause in the statute of frauds relating to contracts for the sale of goods of the price of $30 or more, has reference to executory contracts, and not to contracts executed.

Therefore where the terms of sale were settled, and the vendor accepted the promise of the vendee to pay the stipulated price to another, not making the actual payment a condition of sale, the property was held to have passed and vested in the vendee as soon as he had obtained actual possession of it, by the consent of the vendor, either express or implied, that being equivalent to a formal delivery.

In an action of trespass against one for taking a quantity of logs belonging to the plaintiff, the latter was permitted to recover under the general averment of damages, the profit he would have made by sawing the timber, and by its appreciation in price.

*Trespass*, for taking 500 spruce logs. The plaintiff in his writ claimed to recover the value of the logs, and also special damages for the loss of the profit of sawing said logs at his mill.

The plaintiff, in support of the action, called a witness who testified, that, he was present when the plaintiff came to purchase the logs of *William White, Jr.* in *April*, 1833. That they called the number 500. *White* asked fifty cents apiece for the logs, but *Bucknam* gave $240 for the lot, and agreed to go and see *Oliver* and *Atkins Nash*, of whom *White* purchased the land from which the timber was cut, and have the $240 indorsed on the notes given for the land. He further testified, that the plaintiff and *White* were both upon the logs, examining them, but he saw nothing of any formal delivery ; nor was there any evidence that the $240, or any part of it, had been paid to *O. & A. Nash.*

By another witness the plaintiff proved, that he and the witness, a few days after the transaction above referred to, went on to the logs and began rafting them, *White* being present and making no objection ; and while thus engaged, *Holmes Nash,* the defendant, came and took the logs from their possession. There was much other evidence in the case, which the finding of the jury has rendered it unnecessary to report.

The defendants' counsel requested the Judge to instruct the jury, that there being no writing and no money paid, and the

property being of greater value than $30, no title passed to the plaintiff, there having been *no delivery*. But *Parris J.* instructed the jury, that if they found that the sale was absolute and unconditional, and the parties were on the logs at the time of making the sale, both minds assenting to the transfer of the property, and that the logs were in the river where the plaintiff had a right to go to take possession of them, and did subsequently take possession of them as testified to by *William Bucknam*, the property in the logs passed, notwithstanding there was no formal delivery at the time of the sale.

The defendants' counsel further requested the Judge to instruct the jury, that if they found that *White* sold the timber to the plaintiff, in consequence of a misrepresentation made to him by the plaintiff, of what *Holmes Nash* had said to the plaintiff about giving up the timber, it would make the sale to the plaintiff void. The Judge instructed the jury, that if the sale was conditional, as testified to by *White*, either as to the payment to *Oliver* and *Atkins Nash*, or as to the giving up of the logs by *Holmes Nash*, then, unless they found that the condition was complied with, by payment to *O. & A. Nash*, and that *Holmes Nash* had given up the logs or assented to the sale, their verdict should be for the defendants.

The jury were further instructed, that if they found a verdict for the plaintiff, they might in assessing damages, take into consideration the value of the logs, the loss of the profit that the plaintiff would have received from sawing said logs, and also the loss of his profit in the rise of the price of lumber.

The jury returned a verdict for the plaintiff, which was to be subject to the opinion of the whole Court upon the evidence and instructions reported.

*Hamlin*, for the plaintiff.

*F. Allen*, and *Porter*, for the defendants.

WESTON C. J. — The last request, made by the counsel for the defendants, that the Judge would instruct the jury, that the sale to the plaintiff was void, if he falsely represented that *Holmes Nash* had given up the timber, was substantially complied with. The jury were instructed, that if it was a condition

of the sale, as stated by *White, Junior*, that *Holmes Nash* had given up the timber, and such was not the fact, the plaintiff could not claim under the sale. If then the jury believed *White*, they must have found that *Nash* gave up the timber, and if he did so, there was no misrepresentation upon this point.

With regard to the sale, if the terms were settled, and the vendor accepted the promise of the plaintiff to pay the stipulated price, either to himself, or to others appointed by him to receive it, and actual payment was not made a condition of the sale, the property passed and vested in the plaintiff, at least as soon as he took actual possession. That possession, by the consent of the vendor expressed or implied, there being a sufficient consideration for the sale, was equivalent to a formal delivery. The logs thereby became subject to the plaintiff's control, and the vendor parted with his interest in them, for the promise of the plaintiff to pay the price agreed, which might be enforced at law. The clause in the statute of frauds, upon which the counsel for the defendants rely, has reference to an executory contract. This was a contract of sale executed, as the jury have found, under the instructions of the Judge.

The cases, cited for the defendants, show that where a sale is made, depending upon a condition first to be performed, or at the time of receiving the chattels agreed to be sold, the sale does not become effectual, but upon proof of the performance of the condition. But no objection can be sustained upon this ground; as the jury have negatived every condition insisted upon, or have found it fulfilled by the plaintiff.

The defendants' counsel insist, that the jury were erroneously instructed, as to the true measure of damages. Had this been an action by the vendee against the vendor for not fulfilling the contract of sale, the cases referred to upon this point would have been applicable; and it would have deserved very serious consideration, whether the rule prescribed could have been sustained. But this is an action of trespass, in which the plaintiff has made out his title to the property, upon a sale consummated, which was taken from his possession by the defendants without right, and where they must be regarded as wrongdoers in the same manner, as if neither of them had ever had any pretence of title

thereto.  What, in such cases, is the measure of damages ?   The injured party is entitled by law to a full indemnity.   That may not be in all cases the exchangeable value at the time, of that which is the subject matter of the trespass.   A party has upon his grounds a quantity of standing timber, which he chooses to preserve, in the expectation that it may appreciate in value.   It would hardly accord with the claims of justice, to oblige him to accept from a trespasser, in an action brought to vindicate his rights, the price of the timber, at such time, as he might please to take it from the true owner, although the latter might be able to prove at the trial, that its value had greatly increased.   The owner of timber, prepared to be manufactured, or of any other kind of lumber or merchandise, has an undoubted right to exercise his own judgment, as to the most suitable time of sale, and if *tortiously taken from him, unless he is permitted to recover,* whatever he can prove it would have been worth to him, if retained, he is not indemnified, and the trespasser may be a gainer at his expense.   In the case before us, the jury were instructed, that they might allow the plaintiff the profit, he would have made by sawing the timber, and by its appreciation in price.   He was certainly best entitled to this profit ; and it would be altogether inequitable to leave it in the hands of trespassers.   They are bound, upon the principles of common justice, to put him in as good a situation, as if they had not interfered.

In our opinion, the latitude given to the jury, on the subject of damages, in the instructions of the Judge, did not go beyond what the law of the case required.   A general averment of damage in the plaintiff's declaration, was *sufficient for his purpose,* under which it was competent for him to prove the loss he had sustained, by the trespass alleged, not exceeding the amount set forth and claimed.